### George Barrie et al. v. Rockwell King, Adm'r.

1. CONTRACTS—*Mutually Executory Contracts May be Abrogated by
Agreement Without Consideration.*—A mutually executory contract
may be abrogated by agreement, and set aside at any time, without
there being any consideration for such abrogation other than the release
of the respective parties from their respective obligations.

Barrie v. King.

2. Same—*Tender of Books Under.*—No effectual tender of books, or any portion of them, can be made under a contract, unless the books so tendered comply in all material things with the contract, both as to the books themselves and also as to the time at which such tender was made.

Assumpsit.—Appeal from the Circuit Court of Cook County; the Hon. Frank Baker, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed January 16, 1903.

This was an action to recover damages for an alleged breach of the following contract by Mrs. McGregor Adams, now deceased, by reason of her having refused to take and pay for certain books in accordance with a written contract obtained from her by appellant's agent, here set forth :

" Messrs. George Barrie & Son, Philadelphia.

I hereby subscribe for a complete copy in twenty volumes, Japan vellum edition, of Historical Romances of William Harrison Ainsworth, to be delivered at the rate of one volume per month, as issued; for which I agree to pay on delivery $17.50 per volume. Publishers guarantee that there will be only one thousand copies of this edition printed on Japan vellum paper, and that the work as delivered will be equal in all respects to the sample shown by solicitor.                    Mrs. McGregor Adams.

March 5, 1898.

Issue to begin in January, 1888."

On the left-hand side are the words, " Bound in full Morocco at $17.50 Vol.  J. McG. A."  Also the words, " Color, red."  At the top are the words, " With Historic Memoirs."  At the right hand side are the words, " With Historical Memoirs."  On the back are the words, " Coat of Arms and Fleur de Lis."

The books subscribed for were first tendered in May, 1899.  When tendered, they had thereon the monogram of Mrs. McGregor Adams.  Prior to the tender, Mr. William Burry, a lawyer, and the son-in-law of Mrs. Adams, had been authorized to represent and was representing Mrs. Adams in the matters arising out of her signing such contract.  The tender of the books was made, under such arrangement, to Mr. Burry.  His firm was that of Runnells

& Burry, and to such firm, November 7, 1898, appellants wrote a letter containing the following:

" We do not understand in what you think we acquiesced. On October 16th Mr. Salzer wrote to us that he had seen you and that the subscriptions were valid.    In accordance with this we shipped the volume ready.    We have written Mrs. Salzer to request her husband to call upon you and then send us a written memorandum of what you and he have agreed upon."

Upon the trial Mr. Burry testified that his attention was called to this letter and then testified as follows:

" After that Mr. Salzer called upon me and saw me, and asked what objections there were to the contract.    I told them that Mrs. Adams was a very old lady, about seventy-eight years old, whose memory had almost failed entirely, and who was in feeble health, and that she was in poor condition when Mrs. Salzer called and the contract was made, because she was not able at that time to make a contract, and that he ought to rescind the contract; he asked how old she was, and what her state of health was, and I told him, as I stated here in the conversation, of which I will give the substance, and which lasted over half an hour, and he said he was satisfied and that he was very sorry. He said he was satisfied with my explanation, that he was very sorry that the contract had been taken and that he would hear no more of it.    A month or two afterward he called and told me that he understood the defendant had settled some other contracts; that he understood that two other contracts taken by Mrs. Salzer to Mrs. Adams at the same time, amounting to $700, had been settled by his paying $200 to the book people, and he asked us what we were going to pay them for their contract.    I said to him:  ' I consider them canceled, and your demand a breach of our former agreement, and I will have nothing to do with you in any way,' and he left."

To all of the testimony given by Mr. Burry, the plaintiff objected.    The jury returned a verdict for the defendant upon which there was judgment.

FOLLANSBEE & FOLLANSBEE, attorneys for appellants.

F. B. JOHNSTONE, attorney for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

The contract subscribed by Mrs. Adams provided that the twenty volumes were to be delivered at the rate of one volume per month as issued, and that issue was to begin in January, 1898. As this was but one of a large number of similar contracts for the same work, obtained from time to time by the appellants, it would seem that when the contract under consideration was made, March 5, 1898, that at least two volumes of the work should, at the date of the contract, have been ready for delivery, although there is no direct evidence that such was the case; but under the terms of the contract one volume per month was to be delivered upon each month succeeding March, 1898, whereas there was no tender of any of the volumes until May, 1899, some fourteen months after the making of the contract. According to the testimony of Mr. Alexander Barrie, a witness for the plaintiffs, Mrs. Adams refused to carry out her contract about the 16th day of January, 1899. If such be the case, appellants were excused from preparing or tendering any volumes subsequent to that date, but no sufficient excuse was shown for the failure to deliver any volumes during the months prior thereto.

When the books were tendered there was upon each of the volumes the monogram of Mrs. McGregor Adams.

Mr. Alexander Barrie, testifying for the plaintiff, said :

" I explain the depreciation in the value of the books this way: They were bound in a special color, and each book had stamped on it the monogram of Mrs. Adams. No other person would want a book with another person's monogram, and in uncompleted state. We have never yet, since we have been in business, found a purchaser for books already bound bearing a monogram."

The placing of a monogram upon each of the volumes was beyond and in violation of the contract. The contract no more provided for the placing of Mrs. Adams' monogram thereon than it did for the monogram of the king of England or any other royal personage.

Limited editions, such as this was, are sometimes pur-

chased with a view to profit that may be made by demand
for, or by a rise in value of such edition after the limited
number published, have been sold.   It is manifest that if
such edition contained the monogram of an individual, its
value for the purpose of sale would be lessened, especially
as, upon being offered for sale, such books would appear to
be second-hand.

It may be argued that the monogram could not detract
from the intrinsic value of the books, and was not a mate-
rial departure from the contract.

Books printed upon Japanese vellum paper, an edition
consisting of twenty volumes, sold at $17.50 per volume,
are not purchased for the sole purpose of reading that con-
tained therein, or having them on hand as works of refer-
ence.   They are purchased largely because of the elegance
of the material put into them, the artistic and handsome
manner in which they are brought out, so that they are
things of beauty.   One keeps them as an adornment of his
home, things to gratify his taste, and a delight to look upon.
Purchasing such books at such a price, Mrs. Adams was
entitled to have them entirely in accordance with her con-
tract.   If it were stipulated that the cover of the binding
should be red, appellants were not at liberty to make it
blue; nor to so change the color, although blue might be
considered by artists in better taste and the volumes more
salable.   Mrs. Adams may have desired to present the
books to some one or to sell them.   Whatever may have
been her motive for agreeing to purchase this work, it was
the duty of appellants to comply with the contract, and
not to depart therefrom in a matter as material as was the
placing of her monogram upon each volume.

Appellants asked to have the following instruction given:

" You are instructed, as a matter of law, that in order to
prevent one from completing a contract that he is at work
upon for another, it is not necessary that there should be an
active physical interference with the work that is being
done by the one doing it.   Any act upon the part of the
party for whom the work is being done, clearly indicating
that he will not accept the same if completed, is a preven-

Barrie v. King.

tion of its completion, within the meaning of those words, as used in this connection. And in this case, if you believe from the evidence that the said plaintiff entered upon the contract referred to in the declaration filed in this cause, and after they partially completed the same or a part of the same, and some of them had been tendered, the said defendant, or her duly authorized agents or representatives, declined and refused to take said books, or any part thereof, then you are instructed, as a matter of law, that the said plaintiffs were thereby prevented from completing the same."

The second portion of this, beginning, " And in this case," the court refused to give.

No effectual tender of the books or any portion of the volumes could be made, unless the books so tendered complied in all material things with the contract, both as to the books themselves and also as to the time at which such tender was made. The instruction was properly refused.

Appellant also asked that the following instruction should be given :

" Even if you should believe from the evidence that Mr. Salzer, the husband of Mrs. Salzer, called upon Mr. Burry, the agent of the said original defendant to this suit, and acting for and on behalf of Barrie & Son, agreed that the alleged contract might be abrogated, yet, if you believe from the evidence that there is a want of any consideration for such a promise, you are instructed that such promise, if one was made, is not binding upon said plaintiffs."

A mutually executory contract may be abrogated by agreement, set aside at any time without there being any consideration for such abrogation other than the release of the respective parties from their respective obligations. The instruction was properly refused.

The following instructions were given at the instance of the appellee :

1. " The jury is instructed that if they find a tender of the books was made under the contract sued on in this case, such books must conform to the requirements and specifications of the contract, and if such books do not so conform to such requirements and specifications, Mrs. McGregor Adams and the defendant in this case were entitled to refuse the books so tendered."

2. "If the books tendered under the contract were marked with monograms, or in any other way than as provided in the contract, and such marking was in a material manner or part, and so as to materially affect their value or use, then the subscriber was not obliged to accept them."

Appellants urge that these instructions were improper, in that they did not contain the premise, " if the jury find from the evidence or believe from the evidence." Appellant was contending and still contends that the tender was by it made under the contract sued upon. We hardly see how, under such contention, they could have complained, if the court had instructed the jury that a tender of the books had been made under the contract.

There was no dispute that each volume of the books was marked with the monogram. Such marking was testified to by appellants' witness.

The second instruction, given at the instance of appellee, merely submitted to the jury the question of whether such marking was in a material manner or particular, and so as to materially affect their value or sale, telling the jury that if such were the case, the subscriber was not obliged to accept them.

Mr. Alexander Barrie testified :

" Each of the volumes had stamped upon it the monogram of Mrs. Adams. These books would have been absolutely worthless to any one else."

We fully appreciate the importance of the consideration submitted to us in appellants' brief, in which they call upon this court to right what they term the wrong done to appellants. Appellants have had accorded to them every right to which the law entitles them. They were upon the trial and are here represented by able counsel, so that upon an examination of the record and the briefs here submitted, we say their case could not in our opinion have been better handled. It is infrequently the case that both parties and counsel are not firmly convinced of the justice of the cause in which they are engaged and upon which courts are called to pass judgment. That they should be content with the

conclusions arrived at, is too much to expect from human nature.

We do not find any error in the record of this cause warranting a reversal of the judgment rendered. It is therefore affirmed.